## STATE v. McINTYRE.

No. 5357. Decided April 2, 1937. (66 P. [2d] 879.)

178

180

*King & King,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., for the State.

LARSON, Justice.

Defendant was convicted in the district court of Salt Lake county of the crime of conspiracy to commit extortion, an indictable misdemeanor, and appeals to this court. Appellant has assigned eighty-six errors upon which he relies for a reversal of the judgment. These alleged errors may well be, and are by counsel in the brief, grouped or condensed into eight groups or points of law. The great number of assignments made is due to the fact that the same question or point of law would arise at different times and in different forms during the course of the trial.

The matters urged against the verdict and judgment may be briefly stated as follows:

(1) The district court, which sat as a committing magistrate at the preliminary hearing, was without authority to conduct such hearing and to hold the defendant for trial, because the offense charged is not a felony, but only a misdemeanor.

(2) That defendant's pleas of former acquittal and once in jeopardy were a complete defense to the action. The trial court ruled, as a matter of law, that these pleas were not established, and instructed the jury to find against the defendant on each of these pleas. Appellant contends that the court should have instructed the jury that they should find for defendant on these pleas, or that they should have been submitted to the jury as questions of fact.

(3) That there is no proper evidence to go to the jury of any conspiracy, and the court should therefore have directed a verdict for the defendant.

(4) and (5) Rulings upon admission and exclusion of evidence of two types: (a) Admissions of evidence of acts of, and conversations with, one of the alleged conspirators, not here on trial, and not done or said in the presence of the defendant; and (b) exclusion of evidence offered by defendant tending to show the extent of possession of wine in the community and the policy of the then existing, and past, enforcement officers in regard thereto, as bearing upon defendant's intent and explaining his conduct.

(6) That instructions Nos. 8 and 10 of the court's charge to the jury were erroneous and prejudicial.

(7) That the court should have instructed the jury as requested in defendant's requests numbered 14, 15, and 18.

(8) That defendant's motion for a new trial should have been granted.

We will consider these points seriatim: (1) The original complaint was filed, not before a justice of the peace, but in the district court of Salt Lake county before one of the judges thereof. Thereafter, over defendant's objections, a preliminary hearing was had before one of said judges and defendant held to answer to the district court. Appellant, by proper motions and objections, timely made, has assailed and does now assail, that proceeding. He insists that under the provisions of section 21 of art. 8 of the State Constitution, he has never had a preliminary hearing before any

magistrate legally authorized to conduct such hearing. Section 21 provides:

"Judges of the Supreme Court, District Courts, and justices of the peace, shall be conservators of the peace, and *may hold preliminary examinations in cases of felony.*" (Italics ours.)

The crime charged in the complaint upon which defendant was held to answer, and copied into the information, to wit, conspiracy to commit extortion, is by the statute made an indictable misdemeanor. Comp. Laws Utah 1917, § 8018, R. S. Utah 1933, 103-11-1. It is appellant's position that the constitutional provision above quoted is a limitation upon the powers of judges of the district courts and expressly limits their right to hold preliminary examinations to cases of felony. This question has never been passed upon by this court, and raises the question whether section 21 of art. 8 of the Constitution is a limitation upon the power of the judges, a grant of power to them, or a limitation upon the power of the Legislature. Does the section limit and confine the conservators of the peace therein named to preliminary hearings in felony cases only; or does it grant to justices of the Supreme Court, judges of the district courts, and justices of the peace, as conservators of the peace, the right and power, by virtue of their office, to hold preliminary hearings in cases of felony? If it is a grant of power to those judicial officers, it follows it would be a limitation on the power of the Legislature to deny or take from them the power to hold preliminary examinations in cases of felony. If, as appellant contends, the section is a constitutional limitation upon the power of the judges of the district courts, it necessarily follows that it is likewise a limitation upon the power of justices of the Supreme Court and of justices of the peace. None of the conservators of the peace could then hold preliminary examinations on charges of indictable misdemeanors (yet appellant concedes that justices of the peace may hold such preliminary hearings).

The language of the section clearly indicates a grant of power and not a limitation. It reads, "shall be conservators of the peace, and *may hold* preliminary examinations." In its usual connotation, which we must recognize unless the context requires other meanings, the word "may" imports permission, privilege, liberty to do, lack of restraint, a grant of opportunity or power. It is never properly used in a denial, a restriction, or a limitation, except in connection with the word "not."

But there are other provisions in the Constitution and the statutes which clarify the section above quoted and effectively dispose of appellant's contention. Section 13, art. 1, of the Constitution provides:

"Offenses heretofore required to be prosecuted by indictment, shall be prosecuted by information after examination and commitment by a magistrate, unless the examination be waived by the accused with the consent of the State, or by indictment, with or without such examination and commitment."

No one will gainsay that prior to the adoption of the State Constitution the crime of conspiracy as here charged was an offense required to be prosecuted by indictment, and may, under the section just quoted, now be prosecuted by information after examination and commitment by a magistrate. The term "magistrate" is not defined in the Constitution, but at the time of statehood, the term had a very definite and concrete meaning in our jurisprudence. That meaning was by the Legislature written into the statute immediately after statehood. Comp. Laws Utah 1888, § 4836; section 19, Enabling Act.

"A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offense." Comp. Laws Utah 1917, § 8677, R. S. Utah 1933, § 105-10-4.

Section 105-10-5, R. S. 1933, reads as follows:

"The following persons are magistrates:
"(1) Justices of the supreme court.
"(2) Judges of the district courts.

"(3) Judges of city courts.
"(4) Justices of the peace."

The statutes dealing with preliminary examinations may be noted as follows: Section 8737, Comp. Laws 1917 (section 105-15-1, R. S. 1933), provided that the magistrate before whom the defendant is brought must inform the defendant of the charge against him and his rights; section 8738, Comp. Laws 1917 (section 105-15-2, R. S. 1933), provided that the magistrate must allow defendant time to procure counsel, etc.; and then section 8739, Comp. Laws 1917 (section 105-15-3, R. S. 1933), provides:

"At the time set for the hearing the magistrate before whom the ac-cused is brought must * * * proceed to examine the case."

Succeeding sections provide that the magistrate must hold the defendant for trial or must discharge, etc. The whole chapter nowhere refers to judges, justices of the peace, or any other title except that of the magistrate. Preliminary hearings are not held by or before a judge or justice of the peace, sitting as a judge or justice, but before him sitting as a magistrate, for the purpose of inquiring into a criminal accusation against any person, and the court he then holds is an examining court, and his functions are those only of a magistrate making inquiry into the charge.

The Constitution of California contains a provision similar to ours and construing it, the Supreme Court of that state in *People* v. *Smith*, 1 Cal. 9, said:

"Justices of [the Supreme Court] and the District Judges, being made by the Constitution of the State conservators of the peace, are ex vi termini, empowered to act in the apprehension and commitment of offenders."

Our Constitution, as herein quoted, requires that indicta-ble misdemeanors be prosecuted by information, after ex-amination and commitment by a magistrate. The judge of the district court, of the county which was the venue of the alleged offense, being a magistrate,

had full jurisdiction to hold the preliminary hearing and hold the defendant to answer in the district court.

Appellant's second point involves the pleas of former acquittal and once in jeopardy. Appellant's complaint is directed to the refusal of the trial court to allow the jury to consider the evidence which he introduced to establish his pleas of autrefois acquit and former jeopardy. He claims that these pleas raised an issue of fact which should have been, by the court, submitted to the jury. He relies upon the provisions of sections 8924 and 8925, Comp. Laws Utah 1917, which provide, inter alia:

"An issue of fact arises:
"* * * 2. Upon a plea of a former * * * acquittal; * * * or,
"3. Upon a plea of once in jeopardy."

And,

"Issues of fact must be tried by a jury unless a trial by jury be waived."

Two questions are presented by the argument: (1) Must pleas of former acquittal and former jeopardy always be submitted to the jury as questions of fact? (2) If not, was there evidence in this case of the former acquittal and former jeopardy such as to raise a question of fact for the jury?

If the first question be answered in the affirmative, it disposes of this case. If it be answered in the negative, the second question becomes important. It is too fundamental to require citation of either statute or authorities that in the trial of offenses other than libel the questions of law are to be decided by the court; questions of fact by the jury. The court can therefore submit to a jury only questions of fact raised by the plea under consideration. The defendant has the burden of proving his plea of former acquittal or former jeopardy, and the question as to whether he has offered sufficient evidence to raise an issue of fact upon which a jury can pass is a question of law for the court.

In that regard a plea of former jeopardy or former acquittal or conviction differs from a plea of not guilty. A defendant is presumed innocent until the state, which has the burden of proof to the contrary, has established his guilt to the satisfaction of the jury beyond a reasonable doubt. Should the state fail in its burden, the court may take the case from the jury. On a plea of autrefois acquit or former jeopardy, there is no presumption in favor of defendant. He there has the burden of proof and unless he offers evidence which raises an issue of fact, the court should not submit the matter to the jury. Likewise, if defendant's evidence is conclusive on these special pleas, the court should as a matter of law direct a verdict in his favor on the special pleas.

In the case of *People* v. *Wilkison,* 30 Cal. App. 473, 158 P. 1067, 1069, it is held that:

"While it is true in general that a plea of once in jeopardy presents a question of fact which the jury has the right to solve, where the evidence is uncontradicted and shows a state of the case such as that disclosed here, the question becomes more particularly one of law upon which the court is authorized to advise the jury directly. *People* v. *Cummings,* 123 Cal. 269, 55 P. 898; *People* v. *Ammerman,* 118 Cal. 23, 50 P. 15."

The question has been settled in this jurisdiction by this court in *State* v. *Thompson,* 58 Utah 291, 199 P. 161, 163, 38 A. L. R. 697. Mr. Justice Thurman, speaking for the court, said:

"Comp. Laws Utah 1917, § 8924, provides that issues of fact arise, (1) upon a plea of not guilty; (2) upon a plea of former conviction or acquittal; (3) upon a plea of once in jeopardy. The next succeeding section provides that issues of fact must be tried by a jury unless a trial by jury be waived as therein provided. If the circumstances constituting the basis of defendant's plea of 'once in jeopardy' involve issues of fact, then such issues should have been tried by the jury. If the circumstances relied on by defendant present only issues of law, then it was the duty of the court to try such issues."

It follows, therefore, that question (1) above must be answered in the negative and question (2) therefore becomes important. In order to determine whether or not there was an issue of fact for the jury raised by defendant's evidence on his special pleas, it will be necessary to examine the facts of evidence upon which appellant relies as a basis for the plea.

Since the next point, following this one, to be considered involves a consideration of the sufficiency of all the evidence in the record to justify any verdict against defendant, we may as well set forth here the salient features of the pleadings and the evidence. The information, filed in October, 1931, and upon which defendant was tried, charged appellant, James R. McIntyre, and one Emmet Adams with "the crime of an indictable misdemeanor, to wit, a criminal conspiracy, committed as follows, to wit:

"That the said defendants James R. McIntyre and Emmet Adams continuously throughout the period of time extending from on or about the 1st day of October, 1930, until the 5th day of January, 1931, at the County of Salt Lake, State of Utah, did wilfully and unlawfully agree, conspire, combine and confederate together to commit the crime of extortion, each of said defendants being then and there a duly appointed, qualified and acting deputy sheriff of Salt Lake County, State of Utah.

"That it was a part of said unlawful agreement, conspiracy and combination that said defendants would, under color of official right as deputy sheriffs aforesaid, enter the homes of divers persons in the unincorporated town of Highland Boy, Salt Lake County, State of Utah, for the purpose of discovering wine therein, and in case of such discovery of wine therein, said defendants would, under color of official right as deputy sheriffs aforesaid, wilfully and unlawfully demand from the proprietor of such home and the possessor of such wine, and would wilfully and lawfully obtain with his consent the payment of a sum of money denominated by defendants as a fine or tax, or said defendants would wrongfully and unlawfully obtain from the proprietor of such home and the possessor of such wine a payment of money denominated by said defendants as a fine or tax, by the wrongful use of fear, in that they would threaten the proprietor of such home and the possessor of such wine with the crime of unlawfully and knowingly possessing intoxicating liquor, to wit, said wine, unless

the proprietor of such home and the possessor of such wine consented to and made payment to such defendants of a sum of money denominated by said defendants as a fine or tax.

"And the said District Attorney aforesaid does further say, that said defendants James R. McIntyre and Emmet Adams, at the times and places hereinafter mentioned, under color of official right as deputy sheriffs, and with the intention of committing extortion as aforesaid did do and commit among many other certain acts pursuant to and to effect the object of said wilful and unlawful agreement, conspiracy, combination and confederation, the following overt acts, to-wit:

"I. That on or about the 15th day of December, 1930, defendant Emmet Adams entered the home of Matt Blockovich, located in what is known as the unincorporated town of Highland Boy, Salt Lake County, State of Utah; and said Adams asked Matilda Blockovich, the wife of said Matt Blockovich, how much wine she had in said home, that she informed him that there were about ten gallons of wine therein; and said Adams thereupon instructed her to tell her husband Matt Blockovich (who was not then at home) upon his arrival to come to the office of said defendants located in the City Hall at Bingham, Salt Lake County, State of Utah."

Then follows an enumeration of seven other overt acts, in substance, as follows: (II) That on or about December 15, 1930, said Matt Blockovich went to the office of defendants in Bingham, and Adams there demanded that Blockovich pay him (Adams) $10 for the wine Blockovich had at Highland Boy, which sum Blockovich paid and Adams received. (III) That in November or December, 1930, defendants McIntyre and Adams went to the home of Jennie Kascek in Highland Boy and, finding she had wine in her home, Adams in the presence and hearing of McIntyre demanded that she pay him (Adams) $25 as a wine tax. (IV) That on the day following overt acts (III), one Louis R. Kolman, son of Jennie Kascek, went to the office of defendants at Bingham and paid to McIntyre (appellant herein) $25 of Jennie Kascek's money as a wine tax, pursuant to the demand made the previous day by Adams in the presence of McIntyre. (V) That in November or December, 1930, McIntyre and Adams went to the home of John Urbancio in Highland Boy

and finding he had wine, McIntyre demanded that he pay $25 if he wanted to keep it, which Urbancio argeed to pay. (VI) That in November or December, 1930, one Louis Kolman received from Urbancio $25 which he, Kolman, paid to McIntyre at the latter's office in Bingham as a wine fine against Urbancio, pursuant to the demand made by McIntyre as set forth in overt acts (V). (VII) That on or about December 18, 1930, Adams and McIntyre demanded of one Mary Negmoir in Highland Boy $25 as a wine tax. And (VIII) that on or about December 1, 1930, Adams and McIntyre demanded of Mary Rakich at Highland Boy $25 as a wine tax for wine then in her home.

For convenience in comparing and understanding the question involved, we here set forth that part of the indictment in the case in the United States District Court upon which appellant relies for his special pleas. The appellant, James R. McIntyre, together with Emmet Adams and Orene Timothy, was indicted in the United States District Court at the March term, 1931, and tried. The court directed verdicts of not guilty on all counts as to McIntyre and Timothy, and submitted only one count as to Adams to the jury. A verdict of not guilty was returned on that count.

The indictment was in three counts. The first count charged that on November 15, 1930, defendants transported 30 gallons of wine from the residence of Dan Covich in Highland Boy to some place unknown. The second count charged that on December 15, 1930, Emmet Adams transported 5 gallons of wine from the residence of Martin Pechina in Highland Boy to some place unknown. The third count, the one material here, reads:

"And the grand jurors aforesaid, upon their oath as aforesaid, do further present and find:

"That heretofore, to-wit, continuously throughout the period of time extending from November 1, 1930, until January 1, 1931, at the unincorporated town of Highland Boy, Salt Lake County, State, Division and District aforesaid, the defendants named in Count One hereof unlawfully and feloniously have conspired, combined, confederated and

agreed together and with various other persons to the grand jurors aforesaid unknown, to commit divers offenses against the United States, said offenses to consist of said defendants unlawfully possessing intoxicating liquor, to-wit, wine, containing more than one-half of one per cent of alcohol by volume and fit for use for beverage purposes, and said defendants unlawfully transporting wine, from various places in the said unincorporated town of Highland Boy, County, Division and District aforesaid, a more particular description of said places being to the grand jurors aforesaid unknown, to certain other places in the said unincorporated town of Highland Boy and to other places, a more particular description of which is to the grand jurors aforesaid unknown.

### "Overt Acts.

"And the grand jurors aforesaid, upon their oath aforesaid, do further present that said defendants at the times and places hereinafter mentioned and with divers other persons to the grand jurors aforesaid unknown did do, among many others, certain acts to effect the object of said unlawful and felonious conspiracy, combination, confederation and agreement, that is to say:

"1. That on December 1, 1930, in the said unincorporated town of Highland Boy, the defendant Emmet Adams at the residence of Mary Rakich, requested Mary Rakich to deliver to him five gallons of intoxicating liquor, to wit, wine.

"2. That on December 15, 1930, the defendant Emmet Adams at the residence of Matt Blockovich at the said unincorporated town of Highland Boy received from Matt Blockovich the sum of $10.00.

"3. That on December 18, 1930, at the residence of Mary Negmoir in said unincorporated town of Highland Boy the defendant Emmet Adams and the defendant James R. McIntyre requested of said Mary Negmoir payment of $20.00.

"4. That at the general store of Nick Bolich in said unincorporated town of Highland Boy the defendants Emmet Adams and Orene Timothy requested Nick Bolich to assist them, the said Emmet Adams and the said Orene Timothy, in the collection of money denominated wine fines, from persons in the said unincorporated town of Highland Boy to the grand jurors aforesaid unknown.

"5. That on November 25, 1930, at the residence of Dan Covich in the said unincorporated town of Highland Boy the said defendants received from the said Dan Covich forty gallons of wine.

"6. That on December 15, 1930, at the residence of Martin Pechina in said unincorporated town of Highland Boy the said defendants received five gallons of wine.

"Conclusion.

"And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said defendants continuously throughout the period of time and at the places and in the form aforesaid unlawfully and feloniously did conspire to commit offenses against the United States and did the acts to effect the object of said conspiracy; against the peace and dignity of the United States and contrary to the form of the statute of the same in such case made and provided."

Appellant contends that this third count involves the same offense, the same transactions, as are involved in the information in the instant case and his acquittal therein is a bar to this action. There are two gauges or tests by which it may be determined whether a previous charge relied upon as former jeopardy or autrefois acquit was the same offense as the one involved in the information upon which defendant is on trial. It may, in many cases, be determined by the pleadings (the complaint, information, or indictment) in the two cases; or it may be necessary to prove the charges are the same. If the informations or indictments charge the same crime, committed at the same time and place, in the same manner, and by the same overt acts, in the absence of evidence to the contrary, it may be declared that the same offense is involved, and on proof of former acquittal or conviction or jeopardy, the second prosecution may then be terminated, either by the court as a matter of law or by the jury on a verdict, "For the defendant."

But where the pleadings do not by themselves clearly establish the identity of the offenses, it becomes necessary to look beyond and determine the matter from the evidence offered, or which would be necessary to establish the charges.

Let us apply these tests to the case at bar. Be it noted that appellant put in evidence in support of his special pleas the indictment from the federal court and the verdict and judgment thereon. Do the indictment and the information, on their face, show identity of offense? The third count of the indictment and the information

each charge a criminal conspiracy, the former against the United States, the latter against the state of Utah. The indictment charges the conspiracy was to possess and transport intoxicating liquors; the information charges that it was to extort money from divers persons. Each then sets forth overt acts upon which, inter alia, the claim of conspiracy was predicated. A conspiracy entered into does not become an offense until some overt act is done or attempted to put it into execution. The indictment, in overt act No. 2, alleges that Adams on December 15, 1930, received from Matt Blockovich the sum of $10. The information in acts Nos. I and II alleges that Adams, discovering Blockovich had wine, demanded and received from him the sum of $10. Act No. 1 in the indictment sets forth that Adams on December 1, 1930, requested Mary Rakich to deliver to him 5 gallons of wine. The information, act No. VIII, alleges that Adams and McIntyre about December 1, 1930, demanded $25 from Mary Rakich as a wine fine. The indictment, act No. 3, charges that Adams and McIntyre on December 18, 1930, requested from Mary Negmoir payment of $20, while the information in act No. VII sets forth that Adams and McIntyre about December 18, 1930, demanded of Mary Negmoir the sum of $20 as a wine tax. Overt acts Nos. 5 and 6 in the indictment charge defendants with receiving wine from two persons not mentioned in the information, and of which no evidence was offered on the trial in this cause. The information, in acts Nos. III, IV, V, and VI, sets forth that Adams and McIntyre in November or December, 1930, demanded from Jennie Kascek and from John Urbancio the sum of $25 each as a wine tax and that said sums were paid to McIntyre through one Kolman. There is no mention of these matters in the indictment. Overt act No. 4 of the indictment, not mentioned at all in the information or evidence, states that Adams and one Timothy requested Nick Bolich to assist them in the collection of money denominated wine fines. All the matters are alleged both in the indict-

ment and the information to have taken place at Highland Boy and Bingham.

Upon this situation, the trial court held as a matter of law that the charge in the information was not the offense charged in the indictment and directed the jury to find against defendant on the special pleas. Of this ruling appellant bitterly complains. At the trial the state offered no evidence with regard to overt acts Nos. I and II, pertaining to Matt Blockovich, and the court directed the jury to disregard those two acts.

While both indictment and information charge a conspiracy, the one lays the act against the United States and the other the state of Utah. Under certain conditions, a prosecution in the federal court may be a bar to a prosecution for the same offense in the state court, but we are concerned here only with the question of the identity of the offense as shown by the pleadings, and the different sovereignties certainly do not suggest identity of offense on the face of the record. There is certainly no necessary or apparent connection between possessing and transporting intoxicating liquors on the one hand and extorting money from divers persons on the other hand.

Now as to the overt acts—the earmarks, as it were, of the conspiracy alleged. Act No. 2 in the indictment and acts Nos. I and II in the information as to Matt Blockovich are undoubtedly the same transactions, and they must be so considered. The same is true as to act No. 3 of the indictment and act No. VII of the information as to Mary Negmoir. To hold otherwise would be to stultify ourselves and, like the proverbial ostrich, to avoid things we may not want to see, bury our faces in the sand. The other acts set forth in the indictment have no apparent connection with the charge in the information, or any act therein set forth, and proof of the acts in the indictment, other than as above admitted, would not be proper or competent evidence under the information; and, conversely, proof of the other acts charged in

the information would not tend to prove the offense laid in the indictment.

The question now arises: Does the fact that some acts, which are proper but insufficient proofs under one charge, and which may also be proper but insufficient proofs under another charge, establish an identity so as to make a trial under one a bar to the other? We think not. A simple illustration will make the point clear. A. is charged with a murderous assault upon B. On the trial it is shown that A. and B. left Salt Lake City together in a car to drive to Ogden. On the way A. disclosed to B. that he was going to Ogden to receive some stolen goods and invited B. to join in the enterprise. Upon B's refusal he was assaulted. Now A. drove on to Ogden and was arrested for receiving stolen property. Could not the state upon this trial show the facts involved in the other case of murderous assault? And would that make the acts the same offense so that one would be a bar to the other?

The rule is usually stated that if the evidence necessary to sustain a conviction upon one charge will also be sufficient to sustain a conviction upon the other, a verdict on one is a bar to a prosecution on the other. This is perhaps stating the rule too broadly. To make the offenses the same, the informations need not be identical in language. The name of the offense in the two informations may differ and, within our constitutional provision, the offense still be the same. 1 Bishop's New Cr. L., par. 1050. Said the Oklahoma court in *Estep* v. *State*, 11 Okl. Cr. 103, 143 P. 64, 66:

"The term 'same offense,' as used in the constitutional provision does not signify the same offense eo nomine, but the same criminal act, transaction, or omission. * * *

"A series of criminal charges cannot, under our system of jurisprudence, be based upon the same criminal act or transaction; a single criminal act cannot be split up or subdivided into two or more distinct offenses and prosecuted as such. If the state elects through its authorized officers to prosecute an offense in one of its phases or aspects, and upon his trial the defendant is acquitted by a jury, it cannot afterwards prosecute the same criminal act or series of acts

under color of another name. The state will not be permitted to split or divide up an offense into divers parts, and punish each moiety. See *Hirschfield* v. *State*, 11 Tex. App. 207. A jeopardy on one information will bar a second whenever the proof shows the second case to be the same criminal act or transaction.

"To give our constitutional provision the force evidently intended by the language used, and to render it effectual, the decisive test is whether the same testimony will support both charges. Otherwise stated, the offenses are the same whenever evidence adequate to the one information will equally sustain the other. The constitutional guaranty of immunity from a second prosecution is, in its nature, a restraint on the courts, and constitutional provisions for the security of the personal rights of the citizen should be liberally construed."

In *Williams* v. *State*, 58 Tex. Cr. R. 193, 125 S. W. 42, it is said:

"The rule that one cannot be twice put in jeopardy for the same offense does not mean the same offense by name, but the same criminal act or omission, and it is not essential, to sustain a plea of former jeopardy, that the proofs in the two prosecutions be identical."

It was held in the case of *State* v. *Healy*, 136 Minn. 264, 161 N. W. 590, 591, L. R. A. 1917D, 726, that:

"The constitutional provision that 'no person for the same offense shall be put twice in jeopardy of punishment' is but declaratory of a common-law right which has existed from time immemorial. The general principles and general rules for determining when a second prosecution infringes this right of the defendant have long been settled.

"Blackstone says that the plea of a former acquittal, 'must be upon a prosecution for the same identical act and crime.' Chitty says that the plea 'is sufficient if an acquittal of the one would show that the defendant could not have been guilty of the other.' In *Com.* v. *Roby*, 12 Pick. (Mass.) 496, Chief Justice Shaw said: 'In considering the identity of the offense, it must appear by the plea that the offense charged in both cases was the same in law and in fact.'

"In *United States* v. *Randenbush*, 8 Pet. 288, 8 L. Ed. 948, the defendant was prosecuted for passing a counterfeit $10 bank note, and pleaded that the same note had been put in evidence at his previous trial for passing another counterfeit $10 bank note. Chief Justice Marshall said: 'The plea does not show that he had ever been indicted for passing the same counterfeit bill, or that he had ever been put in jeopardy for the same offense.'

"In *State* v. *Day*, 5 Pennewill (Del.) 101, 58 A. 946, the court say: 'The crime must be the same in fact * * * or must be necessarily included in the former.'

"In *Miller* v. *State*, 33 Ind. App. 509, 71 N. E. 248, the court say: 'When the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second.'

"In *Hooper* v. *State*, 30 Tex. App. 412, 17 S. W. 1066, 28 Am. St. Rep. 926, the court say: 'The proof must be made by showing the identity of the very acts or omissions which constitute the offense; that the acts * * * for which the former acquittal was had are the very acts which constitute the offense on trial.'

"In *State* v. *Klugherz*, 91 Minn. 406, 98 N. W. 99, 1 Ann. Cas. 307, this court said: 'A plea of former acquittal is sufficient whenever it shows on its face that the second indictment is based upon the same * * * criminal act which was the basis of the indictment upon which the defendant was acquitted.' "

It is said in *State* v. *Rose*, 89 Ohio St. 383, 106 N. E. 50, 51, L. R. A. 1915A, 256, at page 263, that:

"It is not enough that some single element of the offense charged may have a single element of some other offense as to which the defendant had theretofore been in jeopardy, but the constitutional provision requires that it shall be the 'same offense.' "

In the case of *Spears* v. *People*, 220 Ill. 72, 77 N. E. 112, 113, 4 L. R. A. (N. S.) 402, at page 404, the court says:

"It is clear that the acquittal in the former indictment and trial is no bar to the present prosecution. To sustain the plea of autrefois acquit the offenses must be identical, and the fact, that an instrument was offered in evidence in a former trial, will not prevent a prosecution for unlawfully passing it. *United States* v. *Randenbush*, 8 Pet. 288, 8 L. Ed. 948. 'Unless the first indictment was such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second.' 2 Russ. on Crimes, 41. * * * In *Com.* v. *Roby*, 12 Pick. (Mass.) 496, it was said, by Chief Justice Shaw: 'If the crimes charged in the former and present prosecution are so distinct that evidence of the one will not support the other, it is inconsistent with reason, as it is repugnant to the rules of law to say, that the offenses are so far the same that an acquittal of the one will be a bar to the prosecution for the other.' In the same case, it was also said by the

same distinguished judge: 'In considering the identity of the offense, it must appear by the plea that the offense charged in both cases was the same in law and in fact. The plea will be vicious if the offenses charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact.' *People* v. *Saunders*, 4 Parker, Cr. R. (N. Y.) 196."

And finally, as said by Mr. Justice Thurman in *State* v. *Cheeseman*, 63 Utah 138, 223 P. 762, 764:

"It is not necessary to unqualifiedly adopt the rule announced in all of these cases. It may be said, however, with perfect safety, that within the doctrine of the authorities cited the acquittal of a person for one offense is no bar to the prosecution of another, unless it appears that some essential element of the second offense was necessarily adjudicated and determined in the offense of which he was acquitted."

Measured by these rules, we are clearly of the opinion that the offense of which the appellant was acquitted in the United States District Court was not the same offense of which he was convicted in the instant case, and no error was committed by the trial court in directing a verdict against the defendant on his pleas of former jeopardy and autrefois acquit.

For the time being, we will pass the matters involved in the third proposition set forth at the beginning of this opinion and come now to a consideration of points (4) and (5) with respect to rulings of the admission or exclusion of evidence. Under subhead (a) of this topic, as set forth above, appellant urges error in rulings on three groups of questions. The first group are questions asked state witnesses on cross-examination on a claim of testing and affecting their credibility, and covers assignments of error Nos. 8, 9, 17, 26, 27, 28, 29, 31, and 34. The questions are mostly such as sought to cast doubt on the veracity of the witnesses by inquiry as to whether or not they were violators of the prohibition laws, given to gambling and to intoxication. It is well-established doctrine in this jurisdiction that you cannot inquire of a witness as to his criminal

acts to test his credibility as of right, except to ask him if he has ever been convicted of a felony. As to other matters affecting the witness' morality or violations of law, the field of cross-examination is largely within the sound discretion of the trial court, and will not be disturbed except in cases of clear abuse of that discretion. *State* v. *Hougensen,* 91 Utah 351, 64 P. (2d) 229. While perhaps many of these questions may have had a different ruling, had the trial court in its discretion done so, we cannot say that the court abused its discretion. There was no error in the rulings. There is no sharply drawn line circumscribing the field of cross-examination and borderline questions are always a matter for the sound discretion and judgment of the trial court.

Another group of rulings relate to questions wherein defendant sought to show a connection between some of the events narrated by the state's witnesses and the events involved in the case in the federal court, under the plea of former jeopardy. The ruling made above upholding the trial court in withdrawing from the jury consideration of the special pleas disposes of these assignments of error.

Appellant's third group of assignments of error, based upon rulings with respect to admission and exclusion of evidence, includes assignments Nos. 6, 7, 11, 12, 21, and 22, and are based upon the admission in evidence of conversations with, and acts of, Adams, one of the alleged conspirators not upon trial in this action, which conversations were had and acts done not in the presence of appellant, McIntyre. Counsel for defendant concede that once the conspiracy is established, the acts and words of each conspirator in pursuance or furtherance of the objects of the conspiracy are binding upon all, even though said or done without their knowledge or acquiescence. But he contends that proof of such acts and words are inadmissible until the conspiracy is established by other testimony. The rule in this regard is succinctly stated with elaborate citation of authorities in 2 Nichols Applied Evidence 1213, as follows:

"Generally, acts and declarations of a conspirator are not admissible until after evidence of the existence of a conspiracy has been introduced, sufficient to make out a prima facie case. But the rule in this respect is not absolute and unyielding, and sometimes, for the sake of convenience, evidence of the acts and declarations of an alleged coconspirator is properly admitted before sufficient proof of the conspiracy is given. The matter rests wholly in the discretion of the court. Thus, where a crime has to be established by circumstantial evidence, it cannot always be required that evidence of a conspiracy to commit the crime be completely established before the state may be permitted to show the acts of a coconspirator. So where the facts from which a conspiracy is to be inferred are so intimately blended with other facts going to constitute the crime conspired to be committed that it is difficult to separate them, it is not essential to the introduction of evidence of the acts and declarations of one of the conspirators that the evidence should first be introduced to establish prima facie the fact of the conspiracy. Moreover, it has been held that it is immaterial in what order testimony predicated upon a conspiracy is introduced if the series of facts and circumstances shown in evidence ultimately make a prima facie case of conspiracy. In other words, although declarations of an alleged confederate are not competent against the accused without proof of conspiracy, the error of their admission is cured by subsequent proof of the conspiracy."

In the instant case there was no direct and independent proof of the conspiracy. The state sought to prove the conspiracy by and through a series of acts and declarations which it contends clearly showed a joint design and a common course of conduct on the part of Adams and appellant to extort money from residents of the Bingham district under color of their office. Direct and positive evidence is not essential to prove a conspiracy. Circumstantial evidence is sufficient to establish it where it excludes every reasonable hypothesis but that of guilt, which must be proved beyond a reasonable doubt. *United States* v. *Richards* (D. C.) 149 F. 443; *People* v. *Strauch,* 144 Ill. App. 283. In a conspiracy trial having shifting scenes of action, great latitude is allowed the trial judge in the admission of circumstantial evidence as the conspiracy often can be shown only by isolated facts and inferences drawn therefrom.

In Underhill on Crim. Evid. (3d Ed.) § 717, page 953, the author says:

"It need not be shown that the parties actually came together and agreed in express terms to enter in and pursue a common design. The existence of the assent of minds which is involved in a conspiracy may be, and, from the secrecy of the crime, usually must be, inferred by the jury from proof of facts and circumstances which, taken together, apparently indicate that they are merely parts of some complete whole. If it is proved that two or more persons aimed by their acts towards the accomplishment of the same unlawful object, each doing a part so that their acts, though apparently independent, were in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment, a conspiracy may be inferred though no actual meeting among them to concert means is proved. Evidence of actual participation rather than mere cognizance, acquiescence or approval of an unlawful act is required to sustain a conviction for conspiracy. But proof of acquiescence in, or consent to, the actions of others is relevant to show the criminal intention of the passive party, and generally the smallest degree of consent or collusion among parties lets in the act or words of one against the others. The details of the conspiracy need not be proved. If a community of purpose among the parties to do some criminal act or acts is shown, it is not necessary that the acts which are charged, or of which evidence has been given, were specifically contemplated by them or included in the original design. In other words, if some general community of interest and purpose to do some act is shown, the declarations are admissible, though a conspiracy to commit the offense in question is not proved."

See cases cited under above section, and *People* v. *Yeager*, 194 Cal. 452, 229 P. 40; *State* v. *Hopkins*, 68 Mont. 504, 219 P. 1106.

The order in which evidence was received was in the discretion of the trial court. The statements and acts of Adams, not done or made in the presence of defendant, were properly admissible in evidence subject, of course, to the record ultimately showing sufficient evidence of a conspiracy, which question will be discussed later.

Complaint is made by appellant that he was not permitted to show that many of the foreign born residents of Bingham and Highland Boy habitually kept wine in their homes for their own use, and that it had been the policy of the peace

officers for many years not to disturb or interfere with them in this possession as long as they did not commercialize it. This was offered in explanation of defendant's action in not arresting the persons who testified for the state that they had wine when McIntyre and Adams called at their homes, that they told the officers they had wine, and Adams demanded money from them as a wine tax or fine. Defendant contended that his visits were merely to caution the people visited that if they sold wine they would be prosecuted and fined $25 to $299, but no arrest would be made for mere possession, and that the state's witnesses either misunderstood the officers or were only telling part of the story. The trial court permitted the defendant to give his version of his visits to the homes of the state's witnesses (where he admitted visiting), but refused to allow defendant to testify as to general policy in the district with respect to tolerated violations of the prohibition law. We find no error in these rulings.

Appellant's next points related to claimed errors in instructions to the jury referred to as points (6) and (7) at the beginning of this opinion. Defendant's requests Nos. 14 and 15 relate to the pleas of former jeopardy and former acquittal and are disposed of by our ruling on those matters herein. Instruction No. 8 as given by the court defines the term "under color of right." We think the court correctly defined this term for the jury and the instruction given is not subject to the objection urged against it.

Instruction No. 10 as given by the court, while perhaps not as full as it could have been, is clear in its meaning and import. The instruction has the approval of the federal court in the case of *United States* v. *Cole,* Fed. Cas. No. 14,832, 5 McLean, 513, and is quoted with approval by Brickwood's Sackett on Instructions (3d Ed.) Vol. 2, p. 1841. See, also, *Musser* v. *State,* 157 Ind. 423, 61 N. E. 1; *People* v. *Arnold,* 46 Mich. 268, 277, 9 N. W. 406; *Spies* v. *People,* 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320.

At this point we will examine the third point made by appellant, which we passed in its natural order, that the evidence is insufficient to connect the defendant McIntyre with the acts and conduct of Adams, and that without Adams' conduct there is nothing to show any wrong-doing on the part of appellant. This is the question presented in defendant's request No. 18 which the trial court refused to give. We can only inquire into the sufficiency of the evidence. The weight thereof is a matter for the jury. We cannot weigh the testimony of one witness as against another. If there is in the record evidence which, if believed by the jury, is sufficient to sustain the verdict, this assignment must be decided against appellant. No good purpose can be served by stating the evidence of the various witnesses in detail, but the following are the salient facts to be met on this assignment:

Appellant, McIntyre, was chief deputy sheriff in the Bingham and Highland Boy district in Salt Lake county. Emmet Adams, the alleged co-conspirator, was a deputy under the supervision of appellant and officed with him in the town hall at Bingham. Together they went to the home of Mary Rakich, and Adams, in the presence of McIntyre, asked her if she had any wine. She told him yes, between 50 and 75 gallons. He then said he was collecting wine fines and she should pay $25, and to send her husband down to the sheriff's office. The following day Mrs. Rakich went to the office where she again met appellant and Adams, and the latter, assuming the role of spokesman, in the presence and hearing of appellant, asked Mrs. Rakich if she was going to pay the fine. On cross-examination by appellant's counsel, she said appellant also asked her to pay the fine.

Together Adams and appellant went to the home of Jennie Kaseck where Adams, not in the presence of appellant, found that Mrs. Kaseck had wine and demanded $25 as a wine tax or fine. She told him she would send the money by her nephew. Appellant and Adams together visited the home of John Urbancio, where Adams, in the presence of McIntyre,

inquired if he had wine. Urbancio showed them the wine and McIntyre asked him to pay them $25. He had about 60 to 100 gallons. He said he would pay. A day or two later, John Kolman, Mrs. Kaseck's nephew, went to the city hall and paid McIntyre $25 for Mrs. Kaseck and $25 sent up by John Urbancio. McIntyre took the money and said, "Thanks." Adams made two calls alone on Mary Negmoir, demanded $25 for wine tax or fine, and on the third trip appellant was with him. Adams, in the presence of McIntyre, again demanded the $25.

There is evidence of similar calls and demands made on other parties by Adams about this time, but at which appellant was not present. None of these parties were arrested nor was their wine taken or confiscated. Appellant admitted going with Adams to the Rakich home and asking Mrs. Rakich if she was selling wine. She said she had some but was not selling and appellant told her if she sold she would be fined from $25 to $299. He denied being at the Urbancio home or the Kaseck home, but admitted he had sent Adams to the Kaseck home to look for wine. He admitted going to the Negmoir home with Adams on one occasion and asking about wine, and telling her she would be fined if she sold any. He denied generally the rest of the state's evidence and denied demanding or receiving any money. This is not all the evidence, but the salient points in the state's case material to the question now under consideration.

We cannot pass upon its weight or credibility, but only upon the question as to whether it presented sufficient evidence to justify the court in sending the case to the jury. Here were two peace officers, sworn to uphold the law and to apprehend violators thereof, whose duty, among other things, was to arrest all persons having wine or other intoxicating liquors in their possession and to seize such wines or other intoxicating liquors, and appellant calmly admitting that he visited some places and found wine and sent his subordinate to other places where wine

was found, did nothing about it; several witnesses testified to demands made by the peace officers for wine fines or wine taxes, some made by appellant and some by his subaltern in his presence, and others not in his presence; evidence that in two cases at least the wine fine demand was paid to appellant himself. Such record, if believed, is sufficient to sustain a verdict against appellant. The jury saw the witnesses, including appellant, heard them testify, weighed their evidence, and found against appellant. There is a direct conflict in the evidence and we, reading the record but not seeing or hearing the witnesses, cannot say the jury was not justified in returning the verdict it did.

We find no reversible error in the record and the verdict and judgment of the trial court are therefore affirmed.

FOLLAND, C. J., HANSON, J., and McDONOUGH and SCHILLER, District Judges, concur.

MOFFAT and WOLFE, JJ., being disqualified, did not participate herein.