2005 UT App 434

STATE of Utah, Plaintiff and Appellee,

v.

Gerald Steven WALLACE, Defendant and Appellant.

No. 20040877–CA.

Court of Appeals of Utah.

Oct. 14, 2005.

John Pace, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Matthew D. Bates, asst. atty. gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., DAVIS and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Gerald Steven Wallace appeals his conviction for various violations of the Utah Uniform Securities Act (UUSA). *See* Utah Code Ann. §§ 61–1–1 to –30 (2000 & Supp. 2002). We affirm.

### BACKGROUND

¶ 2 These criminal proceedings arise out of a Ponzi scheme called "The Program."[1] Defendant learned of The Program from Al Anderson and Paul Stewart. Stewart claimed to be able to earn commissions by facilitating money transfers from banks with surplus cash reserves to banks with insufficient cash reserves. To facilitate these transfers, however, Stewart asserted that he needed to have a certain amount of money on deposit with the bank.

¶ 3 Between August 2000 and March 2001, Defendant purchased at least three homes in the state of Utah. The purchase of each home was conditioned upon the seller agreeing to reinvest a portion of the proceeds from the sale (in each case at least $200,000) in an attorney trust account, which was initially held at Attorney's Title Guarantee Fund. Stewart claimed that he would use the trust account money to facilitate the bank transfers and to pay interest to the trust account

---

1. A Ponzi scheme is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments." Black's Law Dictionary 1180 (7th ed.1999).

beneficiaries from his commissions.[2] In fact, Stewart was embezzling funds from the trust account, and each of the three sellers lost their principal investment and received very little, if any, interest.

¶ 4 The State charged Defendant with selling unregistered securities, *see* Utah Code Ann. §§ 61–1–7 (2000), –21 (Supp.2002), and selling securities without a license, *see id.* §§ 61–1–3(1)–(2) (2000), –21 (Supp.2002). In support thereof, the State offered evidence at trial that The Program was not registered as a security, nor was Defendant licensed to sell securities. Defendant, on the other hand, claims innocence because the record contains no evidence that he knew he was selling securities.

¶ 5 The State also charged Defendant with securities fraud. *See id.* §§ 61–1–1(2) (2000), –21 (Supp.2002). In support thereof, the State offered evidence at trial that Defendant failed to disclose several facts about The Program and those administering it, including that: (1) Defendant declared bankruptcy in 1998, (2) Anderson was convicted of a felony in 1986, (3) a lawsuit was filed in 2000 against Attorney's Title Guarantee Fund and others involved in The Program, (4) Stewart received a cease-and-desist order from the Utah Division of Securities in 2000, and (5) there were certain risks involved in The Program. In·his defense, Defendant argued that he was unaware of the pending legal troubles of Stewart and Attorney's Title Guarantee Fund, and that he did not know that his bankruptcy and Anderson's felony conviction were relevant. Defendant also testified that, contrary to their testimony, he did disclose the risks of The Program to the sellers.[3]

¶ 6 Defendant was convicted by a jury on all counts. The trial court sentenced Defendant to consecutive prison terms for each count, but suspended the prison terms. The trial court placed Defendant on probation for 144 months and ordered $626,000 in restitution.[4] Defendant obtained new counsel and filed a timely notice of appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Although Defendant characterizes his arguments as challenging the sufficiency of the evidence, Defendant is actually challenging the trial court's definition of willfulness, which was taken from a statute and was given to the jury in the form of an instruction. "The correct interpretation of a statute is a question of law and is reviewed for correctness." *State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993).

¶ 8 Based on the definition of willfulness that Defendant now argues is appropriate, Defendant also claims that the State failed to introduce sufficient evidence that his violations of UUSA were willful, and that his counsel at trial was ineffective because he failed to preserve this issue at trial. When reviewing the sufficiency of the evidence, we will "uphold the [jury's] decision if, upon reviewing the evidence and all inferences that can reasonably be drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989). "Where, as here, a claim of ineffective assistance of counsel is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law." *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998). However, "appellate review of counsel's performance must be highly deferential; otherwise the distorting effects of hindsight would produce too great a temptation for courts to second-guess trial counsel's performance on the basis of an inanimate record." *Id.* (quotations and citations omitted).

---

2. The account would purportedly pay interest to the seller at a fixed rate for two years and then return the principal to the seller. The account supposedly generated enough interest to pay not just the seller's interest, but also to pay the buyer's mortgage.

3. Defendant was also charged with engaging in a pattern of unlawful activity (racketeering), *see*

Utah Code Ann. §§ 76–10–1601 to –1609 (1999 & Supp.2002), which he does not address on appeal.

4. As part of probation, the trial court also barred Defendant from acting as a fiduciary or participating in any real estate transactions except for purchasing or selling a personal residence.

¶ 9 Defendant finally asserts on appeal that his 144–month probation violates Utah law. The illegality of a sentence is a question of law, which we review for correctness. *See State v. Montoya,* 825 P.2d 676, 679 (Utah Ct.App.1991).

## ANALYSIS

### I. Sufficiency of Evidence

¶ 10 Defendant argues that the State presented insufficient evidence of his willful intent to commit securities violations. In support thereof, Defendant challenges the trial court's definition of willfulness. The jury was instructed that

[a] defendant acts willfully if it was his conscious objective or desire to engage in the conduct or cause the result—not that it was the defendant's conscious desire or objective to violate the law, nor that the defendant knew that he was committing fraud in the sale of the security.

Although Defendant did not object to this instruction at trial, he now argues that the instruction and resultant convictions were erroneous.[5] We disagree.

¶ 11 Before beginning our analysis, it is necessary to briefly review the statutes at issue in this case. Defendant was charged with one count of selling a security without a license, *see* Utah Code Ann. § 61–1–3(1)–(2) (2000) (stating that it is unlawful to act as a broker-dealer or an agent of a broker-dealer in Utah without a license), one count of selling an unregistered security, *see id.* § 61–1–7 (2000) (stating that it is unlawful to offer or sell a security in Utah unless it is registered), and three counts of securities fraud, *see id.* § 61–1–1(2) (2000) (stating that it is unlawful for any person, in connection with the offer or sale of any security, to "make any untrue statement of a material fact or to omit to state a material fact"). However, violations of these statutes are not criminal unless they are done "willfully." *Id.* § 61–1–21(1), (2) (Supp.2002). While the UUSA does not de-

fine "willfully," Utah's Criminal Code states that a person engages in conduct willfully "when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 76–2–103(1) (1999).

¶ 12 Defendant claims that the State failed to introduce evidence that his sale of securities without a license and that his sale of unregistered securities were willful, arguing that "[t]he record contains absolutely no evidence that [Defendant] believed he was selling securities." However, ignorance of the law is not a defense to a crime. *See id.* § 76–2–304 (1999). Furthermore, while no Utah case has directly addressed this issue, the majority of jurisdictions have rejected arguments that a defendant can avoid criminal liability for selling securities without a license and selling unregistered securities by claiming ignorance. *See, e.g., Bayhi v. State,* 629 So.2d 782, 789 (Ala.Crim.App.1993) ("A specific criminal intent or guilty knowledge that the law is being violated is not required to find criminal violations of those sections of the Alabama Securities Act prohibiting the sale of unregistered securities and requiring registration as a securities dealer . . . ." (internal citations omitted)); *People v. Terranova,* 38 Colo.App. 476, 563 P.2d 363, 367 (1976) (holding that scienter need not be shown with regard to the sale of securities without a license and sale of unregistered securities); *State v. Andresen,* 256 Conn. 313, 773 A.2d 328, 346 (2001) (citing twelve jurisdictions, the court stated "[w]e hold, as have the overwhelming majority of jurisdictions, that the offense of wilfully selling unregistered securities requires proof only that the defendant intended to do the act prohibited by the statute"); *State v. Montgomery,* 135 Idaho 348, 17 P.3d 292, 295 (2001) ("[W]e join the majority of courts that have found scienter is not required for violations of the securities registration and licensing requirements."); *Clarkson v. State,* 486 N.E.2d 501, 507 (Ind.1985) (affirming convictions for selling unregistered securities and

5. Under rule 19(e) of the Utah Rules of Criminal Procedure, "[u]nless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). The term "manifest injustice" is synony-

mous with the "plain error" standard, wherein an appellant must show that an error occurred, the error should have been obvious to the trial court, and the error was harmful. *See State v. Casey,* 2003 UT 55,¶¶ 40–41, 82 P.3d 1106. Here, no error occurred.

selling securities without being a registered agent, the court stated "whether [defendant] was aware of the Indiana securities laws is of no moment"); *State v. Dumke*, 901 S.W.2d 100, 103 (Mo.Ct.App.1995) ("To sustain a conviction under the statute [governing registration of securities and security agents], it is not necessary to find that the accused realized his conduct was in violation of registration requirements."); *State v. Irons*, 254 Neb. 18, 574 N.W.2d 144, 150 (1998) ("Knowledge by a defendant that the item sold is a security is not required in order to convict under the registration provisions of the Uniform Securities Act."); *State v. Sheets*, 94 N.M. 356, 610 P.2d 760, 770 (Ct.App.1980) (rejecting defendant's contention that, in order to commit the crime of selling unregistered securities, one must have knowledge that the item being sold is a security); *State v. Goetz*, 312 N.W.2d 1, 12–13 (N.D.1981) (finding persuasive federal and state cases that hold actual knowledge that a security is being sold in violation of the law is not an element of a willful violation of securities laws). Quite simply, knowledge by Defendant that the items sold were securities was not required to convict him of willfully violating Utah Code section 61–1–3(1) and (2) and Utah Code section 61–1–7. *See* Utah Code Ann. §§ 61–1–3(1)–(2), –7.

¶ 13 Defendant also challenges his securities fraud conviction, *see id.* §§ 61–1–1(2), –21, arguing that the evidence of willfulness was insufficient because he acted in "good faith" and had an "honest" belief that The Program was legitimate. However, Utah courts have refused to read scienter into section 61–1–1(2), *see State v. Larsen*, 865 P.2d 1355, 1360 (Utah 1993), but have instead held that willfulness "does not require an intent to violate the law or to injure another or acquire any advantage," *id.* at 1358 n. 3. "The legislature has indicated that a person acts willfully when it is his or her 'desire to engage in the conduct that cause[s] the result.'" *Id.* at 1358 (quoting Utah Code Ann. § 76–2–103) (alteration in original). Therefore, "[t]o act willfully in this context

means to act deliberately and purposefully, as distinguished from merely accidentally or inadvertently." *Id.* at 1358 n. 3.

¶ 14 Here, Defendant contends that he did not act "deliberately and purposefully," *id.*, because he did not know about the pending legal troubles of Stewart and Attorney's Title Guarantee Fund and because he did not know that his bankruptcy and Anderson's felony conviction were material. In effect, Defendant is asking us to hold that, to convict him of willfully committing securities fraud, the State was required to prove that he knew of the information that he failed to disclose (even though he did not investigate the legitimacy of The Program) and that he knew that such information was material.

¶ 15 We need not reach these issues.[6] Regardless of Defendant's knowledge regarding the other issues, Defendant concedes that he knew of the risks of The Program, and he does not argue that he believed that such information was not material. Instead, Defendant simply argues that, "contrary to the sellers' testimonies, he disclosed the risks to investors." Here, the jury may simply have believed the sellers' testimony over Defendant's. *See Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987) (stating that a trier of fact "is entitled to give conflicting opinions whatever weight he or she deems appropriate"). Although the State alleged a number of material misrepresentations and omissions, one material misrepresentation or omission alone (like Defendant's failure to disclose the risks of The Program to each of the three sellers) may be the basis for a securities fraud conviction. *See* Utah Code Ann. § 61–1–1(2) (making it unlawful to "make *any* untrue statement of a material fact or to omit to state *a* material fact" (emphases added)).

¶ 16 We will reverse a jury's guilty verdict only if "the evidence and its inferences are so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Moore*, 802 P.2d 732, 738 (Utah

6. Although we do not reach the questions posited by Defendant, we encourage the legislature to address these issues.

Ct.App.1990) (quotations and citation omitted). Thus, "so long as some evidence and reasonable inferences support the jury's findings, we will not disturb them." *Id.* Here, the State specifically offered evidence that The Program was not registered as a security and that Defendant was not licensed to sell securities. The State also elicited testimony from each of the sellers that Defendant failed to disclose the risks of The Program. Clearly, "some evidence and reasonable inferences support the jury's findings," *id.*, and we therefore affirm the convictions. Because we have determined that the State introduced sufficient evidence that Defendant's violations of UUSA were willful, the failure by Defendant's trial counsel to preserve this issue does not constitute ineffective assistance. *See State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52 ("[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (alteration in original) (quotations and citation omitted)).

## II. Probation

■ ¶ 17 Defendant claims that the trial court imposed an illegal sentence when it suspended his prison term and placed him on probation for 144 months, arguing that Utah Code section 77–18–1(10)(a)(i) limits probation to thirty-six months. *See* Utah Code Ann. § 77–18–1(10)(a)(i) (2003).[7] We disagree.

■ ¶ 18 When construing the language of a statutory provision, we "presume that the legislature used each word advisedly" and "will not infer substantive terms into the text that are not already there." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (quotations and citations omitted). The trial court's authority to suspend a sentence and impose probation is found in Utah Code section 77–18–1(2), which states that on "conviction of any crime or offense, the court may, after imposing sentence, suspend the execution of the sentence and place the defendant on probation." Utah Code Ann. § 77–18–1(2)(a). Nothing in that section limits the court's right to impose probation to a maximum of only thirty-six months. And section 77–18–1(10)(a)(i) simply states that a court "may" terminate probation upon completion of thirty-six months probation, so long as no violation has occurred within that time. *See id.* § 77–18–1(10)(a)(i). Utah courts have long interpreted the word "may" as permissive, not restrictive. *See, e.g., Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 25, 48 P.3d 895 (interpreting an insurance policy stating that the insurance company "*may* take any appropriate action," the court concluded that the parties used the word "may" "to set forth their intention that [the insurance company] has the option to take appropriate action, but is not required to do so"); *State v. McIntyre*, 92 Utah 177, 66 P.2d 879, 881 (1937) ("[T]he word 'may' imports permission, privilege, liberty to do, lack of restraint, a grant of opportunity or power. It is never properly used in a denial, a restriction, or a limitation ...").[8] Therefore, the trial court here certainly has discretion to terminate Defendant's probation after thirty-six months (so long as no violations have occurred within that time),[9] but is

---

7. Under Utah Code section 77–18–1(10)(a)(i), "[p]robation may be terminated ... upon completion without violation of [thirty-six] months probation in felony or class A misdemeanor cases." Utah Code Ann. § 77–18–1(10)(a)(i) (2003).

8. The legislature has also expressed its intent that Utah Code section 77–18–1(10)(a)(i) be read as permissive rather than restrictive. In *State v. Green*, 757 P.2d 462 (Utah 1988), the Utah Supreme Court interpreted the predecessor to section 77–18–1(10)(a)(i), which stated " '[u]pon completion without violation of [eighteen] months probation in felony or class A misdemeanor cases, ... the offender *shall be terminated from sentence.*' " *Id.* at 464 (quoting Utah

Code Ann. § 77–18–1(10)(a) (Supp.1984)). The court determined that the term "shall" was a strong legislative mandate that required probation to terminate after eighteen months. *See id.* In 1989, less than one year after *Green* was decided, the Utah legislature amended the statute's relevant language to use the term "may" instead of "shall." *Compare* Utah Code Ann. § 77–18–1(7)(a) (Supp.1988) *with id.* § 77–18–1(7)(a) (Supp.1989) (current version at *id.* § 77–18–1(10)(a)(i) (2003)).

9. As one of the terms of probation, Defendant is required to pay restitution in the amount of $626,000 (jointly and severally with other defendants involved in The Program) pursuant to a payment plan.

not required to limit probation to that time frame.[10]

¶ 19 It should also be noted that Defendant here did not have to accept the terms of his probation. *See State v. Allmendinger,* 565 P.2d 1119, 1121 (Utah 1977) ("If the defendant does not like the terms prescribed by the court, he does not have to accept them. And if he does agree to the terms set forth, he should abide by them.") Defendant was convicted of four second degree felonies (each carrying a one- to fifteen-year sentence) and two third degree felonies (each carrying a zero- to five-year sentence), creating a potential range of incarceration from four to seventy years. In the judge's own words, had Defendant accepted incarceration over probation, he would have "conceivably and realistically been spending the rest of [his] life in prison." But Defendant did not choose incarceration. He chose probation and thereby accepted its terms. Having accepted its terms, he now must abide by them. *See id.*[11]

¶ 20 Affirmed.

¶ 21 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and PAMELA T. GREENWOOD, Judge.

---

**10.** We are not bound by cases which, in dicta, assume without deciding that Utah Code section 77–18–1(10)(a)(i) creates maximum probationary periods. *See, e.g., State v. McDonald,* 2005 UT App 86, ¶¶ 17–21, 110 P.3d 149; *State v. Robinson,* 860 P.2d 979, 982 (Utah Ct.App.1993).

**11.** Defendant also asserts that the law does not permit a judge to impose consecutive terms of probation. Having determined that the imposition of 144 months of probation was not in error, we need not reach this issue.