**2024 UT App 113**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KENNETH BOWDREY,
Appellant.

Opinion
No. 20220237-CA
Filed August 8, 2024

Third District Court, Salt Lake Department
The Honorable Todd Shaughnessy
The Honorable Heather Brereton
No. 201914494

Janet Lawrence and Jon D. Shuman,
Attorneys for Appellant

Sean D. Reyes and Hwa Sung Doucette,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

MORTENSEN, Judge:

¶1      Kenneth Bowdrey worked with a colleague to sell
"bindles" of cocaine.[1] Unbeknownst to Bowdrey, his activity was
being watched by police officers, one of whom (Sergeant) was
using a spotting scope to observe the transactions. Bowdrey was
charged with arranging to distribute a controlled substance. The

---

1. "Bindle" is a slang term for "a small package, envelope, or
paper containing a narcotic (as morphine, heroin, or cocaine)." *See
Bindle*, Webster's Third New Int'l Dictionary (2002).

State did not give Bowdrey notice that Sergeant would be testifying as an expert witness until about ten days before Bowdrey's trial. On appeal, Bowdrey alleges that the district court exceeded its discretion in admitting Sergeant's expert testimony, both because of the late notice and on prejudice grounds. Bowdrey also argues that the district court plainly erred in submitting the case to the jury because the State failed to present sufficient evidence to support a conviction. We affirm.

## BACKGROUND

### *The Surveillance*

¶2     A team of five police officers was conducting surveillance on a parking lot in an area where residents and business owners had reported drug activity taking place. Sergeant, who was part of the team, used a spotting scope and sat in an unmarked vehicle about 200 feet away to view the area of suspected drug activity. With the scope, Sergeant said he was able to view the activity as if he were only about fifteen feet away.

¶3     Sergeant testified that he saw a man (Buyer) approach Bowdrey and give him some cash. Bowdrey took the cash and gave it to another man (Seller). After taking the cash, Seller "took something out of his pocket and dropped it on the ground." Bowdrey then picked up this item and gave it to Buyer. The dropped item that was given to Buyer "appeared to be a white substance." After Buyer received this item, he walked back to his car and left the area. Sergeant communicated to his team members a description of Buyer's vehicle so that "takedown officers" on the team could stop it.

¶4     While he was waiting for the takedown officers to stop Buyer's vehicle, Sergeant continued to observe Bowdrey and Seller. He watched them "conduct a similar transaction to the one

that [he] just previously watched" but with a different buyer who was never identified. Sergeant said this unidentified buyer approached Bowdrey and gave him cash. In turn, Bowdrey gave the cash to Seller, who "reached into some portion of his clothing, took out what appeared to be another white bindle or baggy and dropped it on the ground." Bowdrey then "picked it up" and "appeared to bite into it." He then took a "portion for himself" and gave "the unidentified buyer the remaining portion."

¶5    Meanwhile, the takedown officers initiated a traffic stop with Buyer and ordered him out of his car. One of the officers observed a small "plastic bindle" on the driver seat, the contents of which later tested positive for cocaine. In addition, a "loose piece of [a] white rock-like substance," which the officer recognized as crack cocaine, was found in Buyer's pocket. Buyer was released from custody but told that he would be charged.

¶6    Advised by Sergeant that Bowdrey was leaving the scene on foot, one of the officers caught up with him and took him into custody, but nothing illegal or pertinent to the investigation was found on him when he was searched.

¶7    Another officer returned to the parking lot where the transaction had taken place and arrested Seller. A search of Seller revealed that he had two $20 bills and a plastic bag that contained nine smaller baggies, the contents of which later tested positive for cocaine.

¶8    In December 2020, Bowdrey was charged with one count of distributing or arranging to distribute a controlled substance.

*The Proceedings*

¶9    In February 2021, Sergeant testified at Bowdrey's preliminary hearing about the transactions described above involving Bowdrey, Seller, Buyer, and the other unidentified

buyer. Sergeant also testified "that based on his experience, he believed [Bowdrey] was involved in the sale of narcotics."

¶10    Bowdrey's trial was scheduled to begin on August 31, 2021. On August 20, the State filed notice that it intended to call Sergeant as an expert witness. *See* Utah Code § 77-17-13(1)(a) ("If the prosecution or the defense intends to call any expert to testify in a felony case at trial or any hearing, . . . the party intending to call the expert shall give notice to the opposing party as soon as practicable *but not less than 30 days* before trial or 10 days before the hearing." (emphasis added)). Specifically, the State indicated that Sergeant would "be called to testify as to the drugs possessed, the amount and street value of the drugs, and street level distribution." Bowdrey filed a motion to exclude Sergeant's expert testimony based on the late notice and rules 702 and 403 of the Utah Rules of Evidence. *See* Utah R. Evid. 702(b) ("Scientific, technical, or other specialized knowledge may serve as the basis for expert testimony only if there is a threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts."); *see also id.* R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

¶11    In addressing the motion to exclude Sergeant from testifying as an expert, the district court asked, "So if this is . . . testimony from . . . a police officer about the sort of standards and customs . . . based upon that police officer's knowledge and experience, the standard and customs when it comes to distribution of narcotics, what about that type of testimony would the Defense not have been on notice of?" Bowdrey's counsel (Counsel) did not give a responsive answer but instead said that the notice was late and allowing Sergeant to testify as an expert

would allow him to "self-authenticate his investigation and validate the lack of corroborating evidence by analogizing to other investigations and other times."

¶12 Confirming that Sergeant's testimony at the preliminary hearing had provided "at least some opportunity" for cross-examination, the court ruled that Sergeant could testify as an expert at trial. More specifically, the court noted, "[T]here's been fair notice both that [Sergeant] would be a witness and it would not be a surprise to anyone that his testimony is going to venture into the area of testifying about his knowledge and experience as . . . a law enforcement officer with what is common or standard practices among those who are distributing illegal substances." The court also ruled that to "ameliorate . . . any prejudice," Counsel could meet with Sergeant prior to his testimony "to better understand" what he would "testify about." Counsel stipulated to Sergeant's expert qualifications related to his training, experience, and knowledge.

*Sergeant's Testimony at Trial*

¶13 Sergeant testified that he had been in law enforcement for nearly twenty years and had received specialized training in narcotics. He said that he had been involved in "several hundred narcotic-related investigations and arrests" over the course of his career, specifically noting that he had "observed thousands of hand-to-hand drug transactions" and was "well acquainted with the way [drug transactions] transpire, what they look like, what's involved," and "what to look for." After he had revealed his qualifications, the State moved that Sergeant "be declared as an expert in the field of narcotics distribution," and Counsel immediately stated, "[W]e'll stipulate that Sergeant . . . is a qualified, experienced law enforcement officer and can testify about his investigation." As relevant here, Sergeant then addressed the way that drugs are sold in areas such as where he and his colleagues were conducting surveillance:

*Prosecutor*: [A]re there different types of distribution arrangements that you typically see?

*Sergeant*: Yes.

*Prosecutor*: And what are those?

*Sergeant*: Sometimes the person will just go directly up to a dealer. And usually we watch people and look for people who go and park in a specific area. They'll park in the [market's] parking lot, or they'll park in the adjacent parking lot. They'll walk in and they'll contact the dealer directly. Other times you'll have individuals who go out and seek these buyers and bring them to the dealers. And . . . a lot of times they do that for either cash or more frequently they'll do that too for their own drug habit.

*Prosecutor*: Okay. Is it common for just one person to be selling drugs and taking the money?

*Sergeant*: Yes.

*Prosecutor*: In your experience, is it more common to involve multiple people on a team?

*Sergeant*: For selling?

*Prosecutor*: Yes.

*Sergeant*: Typically, we see both. There's not one that happens more often than the other. But usually it's just a single buyer, single dealer. But I've seen hundreds of times where there's an arranger involved or a middleman.

When asked by the prosecution to describe Bowdrey's and Seller's roles, the following exchange took place:

*Prosecutor*: And how would you characterize the role of . . . Bowdrey, in [the] transaction?

> *Sergeant*: He'd be an arranger.
>
> *Prosecutor*: Okay. And how would you characterize the role of [Seller] in [the] transaction?
>
> *Sergeant*: The distributor, the main drug dealer.
>
> *Prosecutor*: And based on your training and experience, did it appear to you that . . . Bowdrey and [Seller] were working as a team?
>
> *Sergeant*: Yes.
>
> *Prosecutor*: Based on what you observed, were you surprised that [Seller] is the only individual that kept both the money proceeds and the drugs on him, on his person?
>
> *Sergeant*: Not at all.
>
> *Prosecutor*: Is that unusual?
>
> *Sergeant*: No.
>
> *Prosecutor*: Okay. Why would a team do this?
>
> *Sergeant*: Well, a lot of times the arrangers are in it for themselves. A lot of times they're addicts themselves, so they're trying to score a little bit. A lot of times the seller will give them a portion of drugs. If you help them get so many buyers, they'll be able to get some drugs to help feed their addiction. Or as what I saw in this case—and I've actually verified it with some of our undercover officers who have made transactions, the arranger will break off a piece of the drugs for themself from these buyers as kind of a finder's fee . . . .

Notably, Counsel did not object to Sergeant's characterization of Bowdrey as an "arranger."

¶14     The jury found Bowdrey guilty as charged. Bowdrey appeals.

ISSUES AND STANDARDS OF REVIEW

¶15     Bowdrey first argues that the district court exceeded its discretion in admitting Sergeant's expert testimony. "We review the admission of expert testimony . . . under an abuse of discretion standard." *State v. Lopez*, 2018 UT 5, ¶ 18, 417 P.3d 116.

¶16     Bowdrey next asserts that the district court should have granted a continuance based on the State's late formal notice of Sergeant's expert testimony. We review a district court's "decision to grant or deny a continuance under an abuse of discretion standard." *State v. Bernards*, 2007 UT App 238, ¶ 14, 166 P.3d 626.

¶17     Bowdrey's third claim is that the district court plainly erred in submitting the case to the jury because the State failed to present sufficient evidence to convict Bowdrey of distribution. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful. If any one of these requirements is not met, plain error is not established." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (cleaned up).[2]

---

2. Bowdrey also asserts that he was deprived of a fair trial given the cumulative effect of the errors. "But there are no errors to accumulate here, rendering the cumulative error doctrine inapplicable in this case." *State v. Sundara*, 2021 UT App 85, ¶ 35 n.6, 498 P.3d 443 (cleaned up).

## ANALYSIS

### I. Sergeant's Expert Testimony

¶18   Bowdrey first asserts that the district court exceeded its discretion in admitting expert testimony from Sergeant.[3] Bowdrey's argument consists of several facets. First, Bowdrey claims that the court exceeded its discretion when it failed to limit the scope of Sergeant's "testimony and conclusory remarks" because Sergeant's expert testimony "improperly bolstered" his fact testimony. Bowdrey next argues that Sergeant "impermissibly addressed the ultimate issue" in his expert testimony when he characterized Bowdrey as an "arranger." Lastly, Bowdrey asserts that the district court should have excluded certain aspects of Sergeant's testimony because the State failed to show the principles supporting Sergeant's "middleman/arranger" theory of conducting transactions were reliable.

### A.   Bolstering Effect of Sergeant's Status as an Expert Witness

¶19   Bowdrey argues that Sergeant's "opinion as an expert" conflated with his "opinion as a fact witness" to interfere "with the jury's role to determine whether Bowdrey was guilty or not guilty of distribution." Thus, Bowdrey argues that the jury should have been allowed to ascertain Bowdrey's alleged involvement in

---

3. The State argues that Bowdrey did not preserve certain aspects of this claim. However, "if the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (cleaned up). "Because we can easily dispose of" this claim on its "merits, we choose to exercise our prerogative to simply assume that [it was] preserved and proceed to consideration of the merits." *Id.*

the distribution without Sergeant's expert testimony bolstering his "testimony about his investigation as a fact witness." Along these same lines, Bowdrey argues that the district court failed to engage in the balancing required by rule 403 of the Utah Rules of Evidence before it admitted Sergeant's expert testimony. Bowdrey argues that Sergeant's playing "competing roles as an expert witness and a fact witness was unduly prejudicial in that it bolstered his credibility as a fact witness by lending the weight of an expert verifying his observations and conclusions," a "dual role" that Bowdrey says "could have confused or misled the jury about their role as factfinders in deciding the ultimate issue—whether Bowdrey functioned as an arranger in a drug transaction."

¶20　Bowdrey has not met his burden of persuasion on this point. Rather, his argument in this respect is almost entirely conclusory. Bowdrey says that Sergeant "was appropriately called as a fact witness to testify about his observations and [Bowdrey's] actions." But, Bowdrey claims, Sergeant "exceeded his scope as a fact witness in a manner that improperly bolstered the credibility of his testimony and interfered with the jury's fact-finding role when he testified as an expert." Bowdrey cites no authority to support his proposition that Sergeant's "dual role" as a fact witness and an expert witness confused or misled the jury.[4] But insofar as this was his argument, it was Bowdrey's well-established burden to support it with reasoned analysis. *See* Utah R. App. P. 24(a)(8) ("The argument [in a party's brief] must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on

---

4. Indeed, as the State pointed out at oral argument, it is commonplace, for example, that medical examiners testify both as fact witnesses (namely, by relaying to the jury what they saw) and as expert witnesses (namely, by recounting the medical conclusions they reached).

appeal."); *see also Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196 ("An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion. A party must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case, including citations to the record where appropriate."); *State v. Drommond*, 2020 UT 50, ¶ 132, 469 P.3d 1056. Without some sort of minimally compelling argument, citation of legal authority, and factual analysis to provide a nexus between Sergeant's status as an expert witness bolstering his credibility as a fact witness, Bowdrey simply fails to carry his burden of persuasion on appeal.

B.     Sergeant's Expert Testimony Addressing the Ultimate Issue

¶21    Bowdrey also argues that Sergeant's expert testimony "impermissibly addressed the ultimate issue" when he testified that Bowdrey was "an arranger." Bowdrey argues that this was the very question the jury was tasked with deciding: "Before you can convict [Bowdrey] of the offense of Distribution or Arranging to Distribute a Controlled Substance . . . you must find from all of the evidence and beyond a reasonable doubt . . . [that Bowdrey did] . . . agree, consent, offer, or arrange to distribute cocaine . . . ."

¶22    "Although there is no absolute ban on expert testimony that embraces an ultimate issue, expert opinions that tell the jury what result to reach or give legal conclusions are impermissible." *State v. Rust*, 2017 UT App 176, ¶ 25, 405 P.3d 869 (cleaned up). This is because "testimony that renders a legal conclusion tends to blur the separate and distinct responsibilities of the judge, jury, and witness," creating "a danger that a juror may turn to the witness's legal conclusion rather than the judge for guidance on the applicable law." *State v. Davis*, 2007 UT App 13, ¶ 15, 155 P.3d 909 (cleaned up). And while "no bright line separates permissible ultimate issue testimony under rule 704 and impermissible

overbroad legal responses a witness may give during questioning," our caselaw "has recognized that expert witnesses who tie their opinions to the requirements of Utah law are quite clearly offering impermissible legal conclusions." *State v. Moore*, 2015 UT App 112, ¶¶ 21–22, 349 P.3d 797 (cleaned up); *see also* Utah R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.").

¶23 Bowdrey's claim here fails because he does not show that any error was made. Put another way, Bowdrey has not shown that Sergeant's testimony embraced the "ultimate issue" in such a way that he gave "legal conclusions" or told the jury "what result to reach." *See Rust*, 2017 UT App 176, ¶ 25 (cleaned up). Nor did Sergeant suggest that he was drawing a legal conclusion about Bowdrey's guilt or that he was invoking Utah law to support his conclusions. Instead, Sergeant's use of the term "arranger" to describe Bowdrey's role in the drug transaction was used as a vernacular synonym for "middleman," a point that Sergeant made explicitly clear when he said that he had "seen hundreds of times where there's an arranger involved or a middleman" in drug deals. Given this context, there was no error for the court to address because Sergeant was not making a legal conclusion, tying his opinion to the requirements of Utah law, or telling the jury what result to reach. Rather, he was speaking colloquially to convey his observations of the role Bowdrey played in the drug sale. Accordingly, this claim fails.

C.     Reliability of Sergeant's Expert Testimony

¶24 The final aspect of Bowdrey's argument concerning Sergeant's expert testimony is that the State failed to make a threshold showing that Sergeant's arranger theory of conducting drug transactions was reliable as required by the Utah Rules of

Evidence. *See* Utah R. Evid. 702(b)–(c) ("The threshold showing [for reliability] is satisfied if the underlying principles or methods, including the sufficiency of facts or data and the manner of their application to the facts of the case, are generally accepted by the relevant expert community."). Bowdrey argues that instead of meeting the requirement that Sergeant's "observations about drug transactions are generally accepted by those who specialize in the field," the State offered only Sergeant's "anecdotal musings" and "conclusory testimony." And, quoting *State v. Turner*, 2012 UT App 189, 283 P.3d 527, Bowdrey says the district court abused its discretion in failing to fulfill its "gatekeeper" function to "screen out unreliable expert testimony" due to its potential for prejudice. *Id.* ¶ 18 (cleaned up).

¶25  As an initial matter, Counsel invited any error regarding Sergeant's qualifications as an expert. At trial, the State moved that Sergeant "be declared as an expert in the *field of narcotics distribution*." (Emphasis added.) Counsel immediately stated, "[W]e'll stipulate that Sergeant . . . is a qualified, experienced law enforcement officer and can testify about his investigation." On appeal, Bowdrey argues that he did not actually stipulate to Sergeant's testimony being reliable enough to warrant testifying about his theory of drug distribution. This assertion is unconvincing. After all, the State asked that Sergeant be declared as an expert in the "field of narcotics distribution," and Counsel unequivocally and without reservation stipulated to his qualifications in that regard. To now say that the stipulation excluded narcotics distribution is a stretch. And Bowdrey cannot now complain that the district court acted exactly as he advocated with regard to Sergeant's qualifications as an expert. *See State v. Winfield*, 2006 UT 4, ¶ 15, 128 P.3d 1171 ("Our invited error doctrine arises from the principle that a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." (cleaned up)).

¶26 But Bowdrey argues more than that Sergeant was not generally qualified as an expert in the field of narcotics distribution. He also asserts that the State "failed to make a threshold showing that [Sergeant's] 'middleman/arranger' theory of drug transactions is a reliable theory" and that the "district court erred in allowing [Sergeant] to give expert testimony" in the absence of such a showing. Specifically, Bowdrey claims that the State "did not address the primary question the district court needed to answer—whether [Sergeant's] observations about drug transactions are generally accepted by those who specialize in the field." Instead, Bowdrey argues that Sergeant "offered only anecdotal musings about what he had observed in the field" and the State "offered no statistical data backing up these claims and no verification by any other source that they are valid or reliable."

¶27 We disagree with this more specific aspect of Bowdrey's argument regarding the reliability of Sergeant's "middleman/arranger" theory. Bowdrey pushes the requirements of rule 702 too far in this situation. He ignores that rule 702 requires a party to make only a "threshold showing" that the "principles or methods" underlying expert testimony are "reliable." Utah R. Evid. 702(b). Contrary to what Bowdrey suggests, this "threshold is not so rigorous as to be satisfied only by methodology or data that are free of controversy." *California College Inc. v. UCN Inc.*, 2019 UT App 39, ¶ 22, 440 P.3d 825 (cleaned up). Instead, "an expert may rely on his or her own interpretation of data that have a foundation in the evidence, even if the data is in dispute," so long as there is "some evidence underpinning" the data used by the expert. *Id.*

¶28 Here, Sergeant's expert testimony satisfied the threshold reliability principles laid down in *Eskelson ex rel. Eskelson v. Davis Hospital & Medical Center*, 2010 UT 59, 242 P.3d 762, as applied to the criminal context. In *Eskelson*, a young boy got a bead stuck in his ear. *Id.* ¶ 2. In an unsuccessful attempt to remove the bead, an emergency room doctor ended up puncturing the boy's eardrum.

*Id.* The boy's parents attempted to introduce expert testimony from another doctor to establish that the emergency room doctor had departed from the standard of care in various ways. *Id.* ¶ 3. The emergency room doctor moved to strike the expert's testimony, arguing that it did not meet the requirements of rule 702. *Id.* ¶ 4. The district court granted the motion to strike after determining that the expert's "testimony was not based on any . . . . technical . . . or other scientific knowledge" and "that his methods were not generally accepted by the relevant scientific community." *Id.* Our supreme court reversed the district court's determination that the expert's testimony did not meet the reliability threshold. *Id.* ¶ 14. Specifically, our supreme court clarified that the doctor's expert testimony, based on "his experience as a physician[] in dealing with similar situations . . . , constitute[d] a threshold showing of reliability." *Id.* ¶ 15. The court unequivocally stated that "rule 702 require[d] no more" than the expert's experience to make a threshold showing in this situation:

> What is required for a threshold showing of reliability will vary depending on the complexity of the particular case. In this case, the fact that [the expert] had experience with the removal of foreign objects from the ears of children satisfies the threshold showing that his testimony was reliable. Identification of a methodology is not necessary where exposure to a nearly identical situation forms the basis of the expert's opinion. Because [the expert's] expertise was unchallenged, his specialized knowledge met the threshold showing of reliability required for the admission of his expert testimony.

*Id.* While we are obviously dealing with a different situation here—a police officer testifying about how people use an arranger to sell drugs versus a doctor testifying about the proper way to

remove foreign objects from children's ears—the parallel with *Eskelson* is obvious. Both experts testified based on knowledge gleaned from exposure to "nearly identical situation[s]," *id.*, as to those at issue. Sergeant's testimony was based not only on his extensive training on the subject but on his experience observing "thousands of hand-to-hand drug transactions." Given this extensive experience—experience that was not only "unchallenged," *id.*, but stipulated to—Bowdrey simply cannot show that the State failed to lay a foundation that Sergeant's middleman/arranger theory was reliable under rule 702. Nor can he show that the district court abused its discretion in allowing Sergeant's testimony that in his experience as a law enforcement officer, drug dealers often use middlemen to conduct a sale. Indeed, this is the quintessential expression of the precept that "law enforcement officers may offer expert testimony on a range of subjects," such as the behavior of drug traffickers, "provided that sufficient foundation is laid for the specific testimony." *State v. Harvey*, 2019 UT App 108, ¶ 17, 446 P.3d 125.

¶29    In sum, the district court did not exceed its discretion in admitting Sergeant's expert testimony. Accordingly, Bowdrey's first claim of error fails.[5]

## II. Continuance

¶30    Bowdrey next asserts that the district court abused its discretion in not ordering a continuance after the State filed late notice that Sergeant would testify as an expert witness, well short of the thirty days required by statute. *See* Utah Code § 77-17-13(1)(a) (requiring notice of an expert at least thirty days before trial). Bowdrey argues that he should have been given a

---

5. We could also resolve Bowdrey's first issue on prejudice. Given the overwhelming evidence of Bowdrey's involvement in a drug transaction—indeed two drug sales—the possibility of an acquittal was beyond remote.

continuance to prepare for Sergeant's expert testimony in order to prevent prejudice. *See id.* § 77-17-13(4)(a). Bowdrey's claim of error here fails for two reasons.

¶31 First, the district court had no duty to sua sponte order a continuance. *State v. Perez*, 2002 UT App 211, 52 P.3d 451, is dispositive on this point. *Perez* makes clear that Utah Code section 77-17-13(4)(a)

> does not mandate that trial judges *shall continue* a trial when the opposing party fails to give notice of expert testimony. Rather, it states that the opposing party *shall be entitled to* a continuance of the trial in that circumstance. 'Entitle' is defined as [to] furnish with proper grounds for seeking or claiming something. Thus, the plain language of subsection (4)(a) [grants a defendant] the right to a continuance, the granting of which [is] contingent on [the defendant] seeking or claiming it. In the absence of a request, the trial court [has] no duty to order a continuance.

2002 UT App 211, ¶ 41 (cleaned up). Here, Bowdrey never sought a continuance. On the contrary, he seemed perfectly content with the idea that the dispute could be resolved at a hearing proposed by the district court. When informed of the late notice, the district court told Bowdrey that the remedy for the late notice would be "either a continuance of the trial or a hearing." The court then proposed a date on which it could be ready for a hearing. And Counsel said he could be ready for "some kind of hearing on that issue." At the hearing, Counsel made no mention of a continuance. Instead, in line with section 77-17-13(6), the court resolved the matter by noting that Bowdrey had "fair notice" that Sergeant "would be a witness and it would not be a surprise to anyone that his testimony is going to venture into the area of testifying about his knowledge and experience . . . as a law

enforcement officer with what is common or standard practices among those who are distributing illegal substances" based on Sergeant's testimony at the preliminary hearing. The court, therefore, did not abuse its discretion in not sua sponte continuing the trial in the absence of Bowdrey's request for a continuance.

¶32 Second, Bowdrey had fair notice that Sergeant would testify about the manner in which Bowdrey distributed the drugs. Sergeant testified at the preliminary hearing that "based on his experience, he believed [Bowdrey] was involved in the sale of narcotics." Sergeant also testified at the preliminary hearing that he observed Bowdrey receive money from Buyer and deliver that money to Seller, who dropped an item on the ground, which Bowdrey subsequently picked up and delivered to Buyer. Sergeant further testified at the preliminary hearing that he observed Bowdrey repeat the same procedure with an unidentified buyer while the takedown team apprehended Buyer. Thus, based on Sergeant's preliminary hearing testimony, Bowdrey was on fair notice that Sergeant would be testifying about the nature of Bowdrey's involvement in the drug sale.

¶33 This fair notice gleaned from the preliminary hearing is significant because Utah Code section 77-17-13(6) states that the thirty-day formal notice requirement

> does not apply to the use of an expert who is an employee of the state or its political subdivisions, so long as the opposing party is on reasonable notice through general discovery that the expert may be called as a witness at trial, and the witness is made available to cooperatively consult with the opposing party upon reasonable notice.

Given that Bowdrey was on fair notice that Sergeant would be testifying and Sergeant was made available to consult with Bowdrey, the district court did not exceed its discretion in not

ordering an unrequested continuance under the circumstances of this case.[6]

¶34    For these reasons, Bowdrey's claim regarding the lack of a continuance after the State's late notice fails.

### III. Sufficiency of the Evidence

¶35    Bowdrey's final assertion is that the "evidence presented in this case was insufficient to sustain a reasonable inference that [he] was acting as an arranger for drug transactions." Since there was no physical evidence tying him to the crime, Bowdrey argues that his "role can only be a matter of speculation" such that his guilt was not proved beyond a reasonable doubt. Bowdrey argues that Sergeant's testimony, while it did provide evidence of Bowdrey's involvement in the drug exchange, was simply too

---

6. Citing *State v. Torres-Garcia*, 2006 UT App 45, 131 P.3d 292, Bowdrey asserts that Sergeant was not made available to cooperatively consult with Counsel in a meaningful way. *See id.* ¶ 20. We are not persuaded by this line of argument because *Torres-Garcia* is easily distinguished. In that case, the state's expert was not called until the second day of the trial, *id.* ¶ 8, and the only notice the state had attempted to give was having sent the expert's name, address, and curriculum vitae to an attorney apparently not associated with the case, *id.* ¶ 13. Actual defense counsel learned of the state's intention to use the expert from a comment made only five days before trial. *Id.* Moreover, there was no indication that the expert in *Torres-Garcia* was made available to consult with the defendant's counsel until *after* the trial started. *Id.* ¶ 14. Here, the situation is markedly different. Sergeant was part of the case from the start and had participated in the preliminary hearing. Accordingly, Bowdrey had every reason to know that Sergeant would be testifying. Moreover, opportunity to consult was provided before the trial started. Given these significant differences, *Torres-Garcia* is of little help to Bowdrey.

speculative to allow the jury to draw a reasonable inference of guilt. Given this alleged evidentiary deficiency, Bowdrey asserts that the district court plainly erred in submitting the case to the jury since "[r]easonable minds must have entertained a reasonable doubt about Bowdrey's guilt."

¶36 "To establish plain error regarding the sufficiency of the evidence, an appellant must show first that the evidence was insufficient to support a conviction of the crimes charged and second that the insufficiency was so obvious and fundamental that the district court erred in submitting the case to the jury." *State v. Gilliard*, 2020 UT App 7, ¶ 29, 457 P.3d 1128 (cleaned up). "An example is the case in which the State presents *no* evidence to support an essential element of a criminal charge." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. But in Bowdrey's case, the evidence was abundant and convincing. And while the evidence might have required the jury to make some inferences, it was far from speculative. "[T]he difference between an inference and speculation depends on whether the underlying facts support the conclusion. A jury draws a reasonable inference if there is an evidentiary foundation to draw and support the conclusion. In the case of speculation, however, there is no underlying evidence to support the conclusion." *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067.

¶37 Sergeant observed the drug deal through a spotting scope. And while he was 200 feet away, the power of the scope allowed him to observe the events as if he were only about fifteen feet away. Sergeant watched Bowdrey receive cash from Buyer, take that money to Seller, and exchange the cash for a small white object that Seller dropped on the ground. Bowdrey retrieved that item and proceeded to deliver it to Buyer, who went to his car and drove off. Moreover, Sergeant observed Bowdrey perform this same basic routine with another unidentified buyer. When Buyer was stopped by other members of the surveillance team, a "bindle" of cocaine was found on the driver seat. Seller was found

with $20 bills and nine additional plastic baggies of cocaine. Sergeant's observations, coupled with the physical evidence collected from Buyer and Seller, provided an evidentiary foundation from which a jury could easily infer that Bowdrey had cooperated with Seller to arrange to distribute a controlled substance.

¶38 Given the robust evidentiary landscape that accompanied this case, we fail to see how the district court plainly erred in submitting the case to the jury. Simply put, it falls far outside the category of cases that require speculation to reach a conviction.

## CONCLUSION

¶39 The district court did not exceed its discretion in admitting Sergeant's expert testimony. Nor did the court exceed its discretion in not granting an unrequested continuance based on the late notice of Sergeant's expert testimony. And there was sufficient evidence to support Bowdrey's conviction.

¶40 Affirmed.

_____